UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-175-KSF

THE ESTATE OF LINIA SHEARER, by and
through her duly appointed Administrator,
GILBERT RAYMOND SHEARER, individually
and on behalf of the Estate of Linia Sheara                                                    PLAINTIFFS

v.                                                **OPINION & ORDER**

T & W TOOL AND DIE CORP., *et al.*                                                           DEFENDANTS

\* \* \* \* \* \* \* \* \*

Currently before the Court is the motion of the defendant, Spencerville Metal Systems, LLC ("SMS"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment [DE #136]. This matter is fully briefed and ripe for review. Also before the Court is the motion of the plaintiffs, the Estate of Linia Shearer, by and through her duly appointed Administrator, Gilbert Raymond Shearer, individually and on behalf of the Estate of Linia Shearer, to strike SMS's motion as untimely [DE #156]. For the reasons set forth below, the plaintiff's motion to strike will be denied and SMS's motion for summary judgment will be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On April 9, 2007, the decedent, Linia Shearer, was employed by Lexington Metal Systems and working on a production line that fabricated bumpers for Nissan Pathfinder automobiles. While observing the castings made from a power press operation, a piece of die ejected from the power

1

press, struck Mrs. Shearer on the neck, and caused her serious injuries and death.

The following facts relating to the die at issue are not in dispute. The original die was purchased by Nissan North America ("NNA") from Tower Automotive in 2004. The die was designed and manufactured to use in manufacturing bumper parts for NNA. Subsequently, Trim Trends Co., LLC ("Trim Trends") took possession of the original die. Trim Trends then sent a component of the die to defendant T & W Tool and Die Corporation ("T & W") in order to have a duplicate of the die manufactured. T & W manufactured the duplicate die and shipped it to Trim Trends in July 2005. Trim Trends later filed for bankruptcy under Chapter 7 of the Bankruptcy Code, and Global Automotive Systems, Inc. ("Global Automotive") purchased the assets of Trim Trends, including the die. Global Automotive did not assume any liabilities of Trim Trends. Later, SMS, a subsidiary of Global Automotive, took possession of the die for a short period of time, although the exact dates are unknown.

SMS winded up its business in 2006 and ceased to exist. Many of its assets, including the die and other machine tools, were delivered to Lexington Metal Systems, also a subsidiary of Global Automotive. The die was in the possession of Lexington Metal Systems, Mrs. Shearer's employer, at the time of the accident and her death.

The plaintiff filed this action in Montgomery Circuit Court on April 14, 2008 [DE #1]. It was subsequently removed to this Court. Although the plaintiffs' Complaint alleges claims against several defendants, the only claims relevant to SMS's motion for summary judgment are the claims that SMS breached its duty to exercise ordinary care by failing to warn Mrs. Shearer or her employer that the die had not been properly maintained and thereby was dangerous. In its motion for summary judgment SMS argues that, as a matter of law, the plaintiffs cannot establish any duty, breach or

causation necessary to establish a claim against SMS.

The plaintiffs contend that SMS's motion for summary judgment is untimely. However, pursuant to the Court's Memorandum Order of October 16, 2009, the deadline for filing all dispositive motions was extended to March 1, 2009 [DE #116]. Inasmuch as SMS's motion for summary judgment was timely filed on March 1, 2009, the plaintiffs' motion to strike SMS's motion for summary judgment will be denied.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow

a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### III. ANALYSIS

In this diversity action, Kentucky law governs. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Kentucky law, in order to survive SMS's motion for summary judgment, the plaintiff must show (1) that SMS owed a duty to Mrs. Shearer, (2) that SMS violated that duty, and (3) that this breach caused the injury to Mrs. Shearer. *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky. App.2001).

Whether SMS owed a duty of care to Mrs. Shearer is a question of law. *Mullins v. Commonwealth Life Ins. Co..* 839 S.W.2d 245, 248 (Ky. 1992). In Kentucky, there is no general duty to act for the protection of others absent some special relationship. *Morgan v. Scott*, 291 S.W.3d 622 (Ky. 2009); *Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995). A special relationship giving rise to a duty to act has been recognized in cases involving *inter alia*, employers/employee, common carriers/passengers, and psychiatrist/patient. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 851 (Ky. 2005); *Devasier v. James*, 278 S.W.3d 625 (Ky. 2009); *Evans v. Morehead Clinic*, 749 S.W.2d 696 (Ky. App. 1988). In this case, however, there is simply no special relationship between SMS and Mrs. Shearer. SMS did not own, possess, or operate the die at the time of her injury. Furthermore, SMS had no involvement with the manufacturing operation of Lexington Metal Systems, Mrs. Shearer's employer. Absent a special

4

relationship, SMS simply owed no duty to Mrs. Shearer.

The plaintiffs, however, argue that SMS owed a duty to Mrs. Shearer based on § 388 of the Restatement (Second) of Torts, entitled "Liability of Persons Supplying Chattels For the Use of Others." Section 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person whose use it is supplied, if the supplier
>
> (a)   knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b)   has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c)   fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts, § 388. While neither party addresses whether SMS, merely a previous owner, is a "supplier" under this section, the Court finds that the plaintiff has failed to come forward with any evidence, other than conclusions, that SMS had any duty to warn Mrs. Shearer or Lexington Metal Systems based on § 388.

The plaintiffs' engineering expert, Dr. Ken Blundell, examined the die and opined that "the failure of the die was due to the presence of machining marks" [DE #136-1, p.12]. According to Dr. Blundell, the machining marks raise the force generated while the press is in operation and "causes localized, microscopic overloading of the die." "[O]ver time, the overloading causes highly localized failure of the die metal producing a microscopic crack." Then, "[i]n a very few cycles of the press, the crack propagates through the die . . . resulting in final fracture of the die." He then

5

made the following conclusions:

(1) The existence of machining marks on the subject die ultimately caused an overload condition of the die that resulted in premature failure;
(2) The presence of machining marks rendered the subject die defective and unreasonably dangerous.
(3) The catastrophic deteriorating of the die would have occurred in a few strokes of the press and would not have been detectable by an operator prior to the disintegration.

[DE #136-1, p. 12] Importantly, Dr. Blundell never opines that SMS knew or should have known of the die's alleged dangerous condition.

The metallurgist expert retained by SMS, Dr. George Langford, examined the subject die, and determined that it was defectively designed [DE #136-2]. He explained that while the manufacturer of the die used the appropriate steel for the application, the inherent brittleness of the steel should have been accounted for by thickening the section of the side of the die. He opined that the defect in the die would not have been detectable until failure.

Although neither expert opined that SMS knew or should have known of the die's alleged dangerous condition, the plaintiffs contend that the testimony of Gary Nowakowski, an officer of T & W, supports the claim that SMS owed a duty to warn to Mrs. Shearer and Lexington Metal Systems. As SMS points out, however, Mr. Nowakowski apparently does not have an engineering background and has not been disclosed as an expert witness as required under Rule 26 of the Federal Rules of Civil Procedure. Moreover, the plaintiffs have failed to provide the Court with a copy or excerpts of his deposition for its review.

Nevertheless, based on Mr. Nowakowski's testimony, the plaintiffs contend that SMS should have known about the die's defective condition based solely on its appearance. In support of this theory, the plaintiff relies on the following testimony by Mr. Nowakowski:

6

> [T]hat through mere observation he could tell the die was in poor condition and had not been properly maintained. It had been neglected and appeared worn down. He further testified that it was not uncommon for Tier 2 suppliers (such as SMS) to not adequately maintain or repair equipment because the money was not available.

[DE #155, p.5]. If Mr. Nowakowski, a lay person could tell by "mere observation" that the die had not been "properly maintained," and was "neglected," and "worn down," its dangerous condition could also have been discovered by Mrs. Shearer and/or Lexington Metal Systems. Therefore, the plaintiff cannot satisfy subsection (b) of §388, which requires that there be "no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition. . . ." Restatement (Second) of Torts, §388(b). Thus, the obviousness of the lack of maintenance and danger defeats the plaintiffs' failure to warn and instruct claim under § 388 of the Restatement (Second) of Torts.

Finally, assuming that SMS owed some duty to Mrs. Shearer, the plaintiffs have failed to offer any proof other than conjecture that SMS breached any duty to Mrs. Shearer by failing to adequately maintain the die. The plaintiffs again rely on Mr. Nowakowski's testimony, and describes his opinion as follows:

> Mr. Nowakowski confirmed the die which caused Mrs. Shearer's death was fabricated by T & W. His opinion was the die failed, at least in part, due to a lack of maintenance. He stated it was obvious the die had been neglected and not properly maintained. According to Nowakowski, the lack of maintenance led to a misalignment of the upper and lower dies, causing the failure that killed Mrs. Shearer.

[DE #155, p.2]. Based on this account of his testimony, Mr. Nowakowski simply posits poor maintenance as a *possible* cause of the die's failure. Even if the Court were to accept his testimony as an expert, his "opinion" is simply not sufficient to lay blame on SMS for failure to properly maintain the die. The mere existence of a possible cause is not sufficient evidence on which a jury could reasonably find that SMS breached any duty of care, causing injury to Mrs. Shearer.

### IV. CONCLUSION

The Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion to strike [DE #156] is **DENIED**;

(2) the motion of SMS for summary judgment [DE #136] is **GRANTED**, and summary judgment will be entered in favor of SMS at the conclusion of this action;

(3) SMS is **DISMISSED WITH PREJUDICE** as a defendant in this action; and

(4) this matter **REMAINS PENDING** against the remaining defendants;

This May 10, 2010.

Signed By:
*Karl S. Forester*  KSF
**United States Senior Judge**